UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2016 APR 22 PM 12: 50

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| JOHN M. HOLLAND | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO.: |
| MICHAEL MITCHEFF, M.D., MANDIP BARTELS, M.D., JOHN NWANNUNU, M.D, NEIL MARTIN, M.D., and MAY BENITO-REFUGIO, PT, | ) 2:16-cv-0134 LJM-MJD |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES

**COMES NOW,** the Plaintiff, John M. Holland, by counsel, Gilchrist & Borinstein, LLP, by Rochelle E. Borinstein and Laurel R. K. Gilchrist, and for his Complaint against the Defendants, alleges and states as follows:

### INTRODUCTORY STATEMENT

1. This is an action for damages sustained by a citizen of the United States against Michael Mitcheff, M.D., Mandip Bartels, M.D., John Nwannunu, M.D., Neil Martin, M.D. and May Refugio Benito, PT, medical providers at the Wabash Valley Correctional Facility (WVCF) who were deliberately indifferent to the serious medical needs of the Plaintiff, John M. Holland while he was an inmate at the WVCF, Indiana Department of Correction.

### JURISDICTION

2. The Plaintiff hereby incorporates paragraph 1 of Plaintiff's Complaint as if set

forth fully herein.

3. This action is brought pursuant to 42 U.S.C. § 1983, and the Eighth Amendment of the Constitution of the United States.

4. This Court has subject matter jurisdiction under 28 U.S.C.§§§ 1331, 1343(a)(3),(4) and 1391.

## PARTIES

5. The Plaintiff hereby incorporates paragraphs 1 through 4 of Plaintiff's Complaint as if set forth fully herein.

6. The Plaintiff was, at all times mentioned herein, a prisoner of the State of Indiana in the custody of the Indiana Department of Correction, WVCF, and at all times relevant to this action was a citizen of the United States. Plaintiff is currently confined in New Castle Correctional Facility (NCCF), in New Castle, Indiana.

7. At all times relevant to this action, Defendants Michael Mitcheff, M.D., and Mandip Bartels, M.D., were employed at the offices of the Regional Medical Director. Defendants John Nwannunu, M.D., Neil Martin, M.D. and May Refugio Benito, PT, were health care providers employed with the Indiana Department of Correction to perform duties in the WVCF.

8. Each Defendant is sued individually and in his/her official capacity. At all times mentioned in this Complaint, each Defendant acted under the color of state law.

## FACTUAL ALLEGATIONS

9. The Plaintiff hereby incorporates paragraphs 1 through 8 of Plaintiff's Complaint as if set forth fully herein.

10. The Plaintiff began serving a life sentence in approximately 1975 and has been

incarcerated ever since.

11. On or about April 7, 2014, the Plaintiff suffered a stroke while housed at the WVCF.

12. On or about April 7, 2014, the Plaintiff was transported to the Terre Haute Regional Hospital (THRH) for treatment related to his stroke.

13. While at the THRH, the Plaintiff was under the care of Irving Haber, DO, as well as other members of a medical care team.

14. On April 7, 2014 was diagnosed with stroke with left body involvement, which was confirmed by MRI on April 8, 2014.

15. On April 21, 2014, Dr. Haber wrote in a progress note of a weekly care team conference regarding the Plaintiff's post-stroke cognitive functioning:

> He has been on Exelon (rivastigmine) at 3 mg twice daily level and I did prior to the conference increase his level to 4.5 mg b.i.d. ... He is quite grateful overall and again his Montreal cognitive assessment has improved from a 22 out of a possible 30-25. He has done well with Exelon and should better with a higher dose. He was agreeable to do the same. (See Ex. A).

16. Dr. Haber wrote in his April 21, 2014 note that the Plaintiff "would warrant and benefit from speech therapy, he probably can do this for at least a 4 week period subsequent to his discharge." (See Ex. A)

17. With regard to speech therapy, Dr. Haber wrote in his April 21 note that the Plaintiff "would warrant and benefit from speech therapy to help improve his recall of written and auditory information and to learn how to use memory assistance as well." (See Ex. A)

18. With regard to occupational therapy for the four (4) week period, Dr. Haber wrote in his April 21, 2014 note:

> His needs for assistive equipment would probably be dramatically reduced with outpatient occupational therapy and other than modifications which would be simple enough to install in a handicapped bathroom, perhaps including a toilet safety frame or the like. Other than that, he would require no special equipment and negligible needs for modifications and indeed may not even require these at the end of that period of time. (See Ex. A)

19. With regard to physical therapy, Dr. Haber wrote in his April 21, 2014 note:

> He has been walking with a rolling walker with supervision; however, I think he can do better than this and given his ability to attend outpatient therapy after his discharge, I think that would be the most appropriate followup for him. ...He would need to improve his balance and /sic/ physical therapy and probably should be able to ambulate first with a straight cane and probably thereafter without any assistive device. (See Ex. A)

20. On April 22, 2014, the Plaintiff was discharged from the THRH and returned to the WVCF.

21. Upon the Plaintiff's discharge, Dr. Haber prescribed physical therapy, occupational therapy and speech therapy to be conducted three (3) times a week for four (4) weeks. (See Ex. B)

22. Specifically, Dr. Haber ordered: (1) gait training; (2) balance training; (3) ADL retraining; (4) dysphagia therapy; (5) dysarthria therapy; (6) voice therapy; (7) cognitive therapy. (See Ex. B)

23. Upon his discharge, Dr. Haber prescribed approximately 18 medications. These included Norco and Neurotin for pain. Dr. Haber also continued the prescription for Exelon (rivastigmine) 4.5 mg twice daily for cognitive function. (See Ex. B)

24. The physician Defendants discontinued Exelon (rivastigmine) on approximately April 24, 2014, two (2) days after he was released to WVCF.

25. On April 24, 2014, Defendant Bartels denied the request that the Plaintiff be

permitted to attend outpatient physical therapy, occupational therapy and/or speech therapy as been prescribed by Dr. Haber.

26. On April 29, 2014, Defendant Benito-Refugio, PT conducted an initial evaluation of the Plaintiff and performed one physical therapy session on May 6, 2014. There is no record of the Plaintiff having received any additional physical therapy while at WVCF.

27. The Plaintiff never received occupational therapy.

28. The Plaintiff never received cognitive/speech therapy.

29. On April 30, 2014 Defendant Bartels ordered physical therapy one time per week, at the WVCF and ordered the physical therapist to show the nurses how to continue the physical therapy at site on the remaining days.

30. None of the nurses employed at the WVCF were licensed physical therapists.

31. Despite Defendant Bartels' order for one day of physical therapy per week, Defendant Benito-Refugio failed/refused to conduct the physical therapy sessions as ordered and failed/refused the train the nursing staff at WVCF in how to continue the physical therapy.

32. All health care Defendants, including those employed at the office of the Regional Medical Director, acted with deliberate indifference to the Plaintiff's serious medical needs, when they failed to comply with the orders of Dr. Haber of THRH.

33. As a result of the Defendants' acts and omissions, the Plaintiff suffered significant physical and mental injuries.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

34. The Plaintiff hereby incorporates paragraphs 1 through 33 of Plaintiff's Complaint as if set forth fully herein.

35. The Plaintiff attempted to use the prisoner grievance procedure available at

WVCF regarding his pain medications and rehabilitation, but was stopped from doing so.

36. Plaintiff filed a grievance upon his transfer to the prison infirmary at NCCF on September 16, 2014 and on November 19, 2014, received a receipt showing that the grievance has been received on September 17, 2016. Unfortunately, Plaintiff did not receive the receipt until November 19, 2014. Thus, any possible appeal process has ended. Plaintiff has been unable to restart it. (See Ex. C)

37. Plaintiff was allowed access to the law library, and offenders that would help him and keep records for him, approximately twice per month. Without assistance, the filing and exhausting of Administrative remedies ended for the Plaintiff following his April 7, 2014 stroke.

## COUNT I VIOLATION OF THE EIGHTH AMENDMENT

38. The Plaintiff hereby incorporates paragraphs 1 through 37 of Plaintiff's Complaint as if set forth fully herein.

39. The actions and omissions described above, engaged in under the color of state authority by the Defendants, deprived the Plaintiff of rights secured to him by the Constitution of the United States, including, but not limited to the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

## CONCLUSION

40. The Plaintiff hereby incorporates paragraphs 1 through 39 of Plaintiff's Complaint as if set forth fully herein.

41. Each of the Defendants acted with deliberate indifference, although under the color of statue, ordinance, regulation, custom or usage of the State of Indiana, and violated the rights secured to the Plaintiff by the provisions of the Eighth Amendment of the Constitution of the United States of America and by 42 U.S.C. §§1983

42. The Plaintiff in no way instigated, caused or contributed to the complained of conduct.

43. The refusal to allow the Plaintiff access to medications and rehabilitation was in deliberate indifference to the Plaintiff's serious medical condition.

44. Solely as a result of these acts and omissions, the Plaintiff was made to suffer cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

45. Solely as a result of the Defendants' conduct, the Plaintiff has suffered damage and injury.

**WHEREFORE, the** Plaintiff, John Holland, by counsel, Gilchrist & Borinstein, LLP, by Rochelle E. Borinstein and Laurel R. K. Gilchrist, demands judgment against the Defendants:

(A) For compensatory damages as determined by the trier of fact to adequately compensate the Plaintiff for the injuries described in this Complaint;

(B) For the Plaintiff's costs and disbursements of this action;

(C) For the Plaintiff's attorney fees incurred in prosecuting this action pursuant to 42 U.S.C. §§ 1988; and 1983..

(B) For all other relief just and proper in the premises.

Respectfully submitted,

By: _____
Laurel R. K. Gilchrist (16768-53)
laurelgilchrist@gilchristandborinstein.com

By: _____
Rochelle E. Borinsein (24098-49)
rborinstein@gilchristandborinstein.com

**GILCHRIST & BORINSTEIN, LLP**
2002 East 62nd Street
Indianapolis, Indiana 46220
(317) 802-7461